## Young et al. v. Madison's Ex'r et al.

(Decided Dec. 15, 1933.)

CHAS. C. HARLAN and LAWRENCE & CARTER for appellants.

W. T. OTTLEY and C. R. HICKS for appellee.

OPINION OF THE COURT BY JUDGE PERRY—Affirming.

P. A. Madison, a resident of Cumberland county, died testate in January, 1931, following which, in the

February term of the Cumberland county court, J. E. Lewis was appointed executor of his estate, and duly qualified as such and is now administering said trust. The appellant L. V. Shelly was subsequently appointed guardian for the infant appellant Bill Young, then some sixteen years of age.

On June 14, 1932, J. E. Lewis, as executor of P. A. Madison's estate, filed his petition as such in the Cumberland circuit court seeking a construction of this will, to the end that being so advised he might properly administer the estate. A copy of decedent's will is filed with and made a part of the petition, which in its terms and provisions is as follows:

"First: It is my will and desire and I hereby direct that all my just debts and burial expenses be full paid.

"Second: I will, devise and bequeath to my beloved wife Hattie Madison the farm on which I now live, known as the Curtis land.

"Third: I will, devise and bequeath to my nephew Bill Young, the farm I now own known as the Dr. Keen farm, but should he die before he arrives at the age of 21 years or die without a child of his own, said land is to revert to my estate, and to be disposed of as provided by 10th clause of this will.

"Fourth: I will, devise and bequeath to my beloved wife Hattie Madison two cows, the same to be any two cows she may select.

"Fifth: I will, devise and bequeath to my beloved wife Hattie Madison, my automobile.

"Sixth: I will, devise and bequeath to my nephew Bill Young one red faced cow that he claims, also the pony he claims.

"Seventh: I will, devise and bequeath to Frank Purdue, Bill Purdue, and Vela Purdue, my nephews and niece, the sum of one hundred dollars each.

"Eighth: I hereby direct that my executor hereafter named, take charge of all my live stock except three cows above named and pony, and the other live stock willed to my wife, and keep same on the farm until such as he may deem best to sell

same, and out of the proceeds of said live stock and farm, the proceeds of my farming tools and all the debts oweing to me, and what money I have on hand, my just debts be paid as soon as practical.

"Ninth: I will, devise and bequeath to my brother Henry Madison the sum of $300.00 and I will, devise and bequeath to my Brother Marion Madison, the sum of $700.00 the same to be paid to them by my executor hereafter named as soon as practical.

"Tenth: In event my nephew Bill Young dies before he arrives at the age of 21 years or without a child of his own, the land willed to him by this will to be sold, and the proceeds thereof to be equally divided between Bill Purdue, Frank Purdue, Vela Purdue, Mollie Thurman, Ella Watson, Eula Young and Myrtle Burns, one-seventh each.

"Eleventh: It is my will and desire that the land willed to Bill Young herein, shall not be conveyed or incumbered by mortgage by him until he arrives at the age of 30 years.

"Twelfth: I hereby nominate my friend J. E. Lewis, as executor of this my last will and testament, having the utmost confidence in him, I ask the Court to permit him to qualify as such executor, without bond, and I give said executor full power to do any and all things necessary to carry out this will.

"Thirteenth: I will, devise and bequeath to my nephew Bill Young, my mowing machine, corn planter and old tractor, and also my best wagon."

Further petitioner alleged that deceased had by the terms of his will specifically devised all his real estate to his wife, Hattie Madison, and his nephew Bill Young; that he, as executor of the estate, had taken over the personal property as directed by clause 8 of the will and had sold same, but that the proceeds derived therefrom were insufficient to pay testator's debts, funeral expenses, and costs of administration exclusive of any part of the general bequests made by clauses 7 and 9 of his will of $1,300 bequeathed his two brothers and his nephews and niece named therein, and which bequests he pleaded were void by reason of no estate remaining in his hands, real or personal, not specifically devised,

with which to pay same. He further stated that it would be necessary to sell a part of the specifically devised lands sufficient to raise the amount necessary for the payment of testator's debts, and that each of said two tracts so specifically devised should bear its proportionate part in paying the indebtedness according to its value. Further he alleged in his petition that by clause 3 of the will, the Keen farm, which was specifically devised to testator's nephew Bill Young, upon the contingency that should he "die before arriving at the age of 21 years or die without a child of his own," the land should revert to testator's estate to go as provided by clause 10 of his will, directing that in that event, his nephew Bill Young so dying, that the land so willed to him was to be sold and the proceeds thereof equally divided between his seven nephews and nieces, therein named. Also, that by clause eleven of the will, he further entailed this specific devise made Bill Young by declaring it was his will that same should not be conveyed, incumbered, or mortgaged by Young until he should arrive at the age of 30 years. In conclusion, he prayed that the court construe the said will and each clause thereof for him, to the end that he might understand the rights of all the devisees under said will, when construed as a whole by the chancellor, and be accordingly advised thereby.

An answer was filed by the beneficiaries named in clauses 7 and 9 of the will, making them general bequests amounting to $1,300, by which they denied that the administrator had nothing in his hand with which to pay the bequests made them or that the will made no provision for the payment of their bequests; also, that testator had died childless, and joined in praying that they be given the devises made them and for a construction of the will and that the lands specifically devised thereby be sold to satisfy their demands.

Upon submission of the cause for judgment, the learned chancellor adjudged a construction of the will as follows:

"First: That all just debts owing by the testator at the time of his death, the burial and funeral expenses and cost of administration be fully paid out of the proceeds of the estate.

"Second: That the devisee Hattie Madison is entitled to the property willed to her by the 2nd,

4th, and 5th clauses of the will, that she takes a fee simple title to said property, and further adjudges that she take same subject to the pro rata part of the just debts owing by the estate, and also subject to its pro rata part of the special devises made by the 7th and 9th clauses of the will.

"Third: That the devisee Bill Young is entitled to the property devised to him by the 3rd, 6th and 10th clauses of said will subject to its pro rata of the debts owing by the estate and subject to its pro rata part of the special devises made by 7th and 9th clauses of said will but further adjudges that he only takes a defeasible title to said property, subject to be defeated upon his dying before he arrives at the age of 21 years and subject upon his dying at any time without a child of his own.

"Fourth: That the devisees Henry Madison, Marion Madison, Frank Purdue, Bill Purdue and Vela Purdue, are each entitled to receive the amount devised to them by the 7th and 9th clauses in said will, but further adjudges that they each take the amount so devised to them subject to its pro rata part of the debts owing by the estate and also its pro rata part of the special devises, made by the 7th and 9th clauses of the said will

"Fifth: That whatever sum of the debts owing by the estate, funeral and burial expenses, cost of administration, and the special devises that remain unpaid, after exhausting all proceeds of the personal property belonging to the estate not specifically devised, it will be necessary to sell enough of the land to finish paying same.

"And further adjudged that each said two tracts of land the one devised to the defendant Hattie Madison and the one devised to defendant Bill Young bear its proportional part of same according to its value."

The appellant Bill Young by his guardian prosecuted this appeal, as granted by the court, from its judgment construing the will, contending that the court erred: (1) In adjudging that the land specifically devised appellant was subject to a pro rata charge for payment of the general bequests made by clauses 7 and

9 of the will and in ordering a sale of a sufficiency of the land so devised him required to pay said indebtedness or any part of said general bequests mentioned in said clauses; (2) in adjudging a defeasible fee rather than a fee-simple title upon the occurrence of either of the two contingencies named, that is "on arriving at the age of 21 years without issue or prior to that time in the event of issue being born to him, lawfully," subject to the will's direction that the land be not incumbered, conveyed, or mortgaged by appellant until he should arrive at the age of 30; (3) in awarding a sale of any part of said land specifically devised him to pay the general legacies or indebtedness of the estate or for any purpose, as section 8 of the will provides a special fund and for the manner in which its indebtedness is to be paid, and further that the land specifically given him by clauses 3 and 10 of the will directs by clause 11 that same is to be kept intact, free from conveyance or mortgage, until he should arrive at the age of 30; and (4) that the court erred in failing to award him the property or farm specifically devised him by the last or thirteenth clause of the will.

We will now undertake the consideration and disposition of these contentions as urged by appellant seeking reversal of the criticized provisions of the judgment in the order in which here presented.

The first complaint made is that the court erred in adjudging that the lands specifically devised by the testator to the appellant and to his widow, Hattie Madison, should be charged with the pro rata payment of the general bequests, amounting to some $1,300, made by the seventh and ninth clauses of the will, and in like manner should also be charged with the payment of the indebtedness of the estate remaining unpaid after exhausting the personal property or special funds, set aside by clause 8 to the executor for their payment. It is admitted that this special fund has been handled by the executor, and that the proceeds, derived by him therefrom, are insufficient to pay the indebtedness of the estate, exclusive of payment of the general bequests directed to be also paid therefrom. It thus appearing that the special fund provided by the testator for payment of both his indebtedness, and also the general bequests, is insufficient to pay even the estate's indebtedness, and that there remains no other assets, real or

personal, not specifically devised or bequeathed, with which to pay such general bequests, we conclude that in harmony with the well-settled and applicable rule controlling in such case, the latter must for such reason lapse and be adjudged void. From this it follows that the ruling of the learned chancellor, in construing this provision of the will so as to adjudge the general bequests valid and payable under these circumstances to the legatees, named in clauses 7 and 9 of the will, and making their pro rata payment a charge upon the specifically devised real estate and personalty, upon the ground of their being equally and alike payable with the indebtedness of the estate, was erroneous, and the judgment is to such extent, in so holding the general bequests to be here valid and payable, ratably, out of and with the specific devises, in error and must be reversed. However, appellant's contention further made in argument, that the court alike erred in holding the specifically devised lands and personalty to be ratably charged according to value, with the payment of such part of the estate's remaining indebtedness for which there were available to the executor, no other assets or property, either devised or not devised, with which to pay the same, cannot be sustained, since it must be conceded that the decedent could not by the form of his will, defeat the just payment of his debts even if he had so desired, which is not to be assumed, and improbable, by devising or bequeathing his property in whatsoever manner made whether specifically or otherwise, so as to effectually remove it beyond the reach of his creditors. Both by moral and legal compulsion, one's giving, whether testamentary or inter vivos, must follow rather than precede the just application of his property to the payment of his debts, and to such effect are the mandatory provisions of sections 2084 and 2088 of the Statutes, providing that: ''Devisee shall be liable for all debts and liabilities of the testator in the same manner as the heir of the testator would have been liable if the property devised had descended to the heir,'' and also that ''the representative, heir and devisee of an heir or devisee, shall be chargeable for the liabilities of their decedent or testator, respectively, to the creditors of the original decedent or testator.''

Also by section 2076 of the Statutes, providing that, ''as respects the payment of the testator's debts, there

should be no distinction between specific and general devisees, * * *'' and by section 2073 of the Statutes it is further provided that:

"When any estate, real or personal, which has or shall be devised, shall be taken from the devisee for the payment of a debt of the testator, * * * each of the other devisees shall contribute his proportion of the debt, * * * according to the value received by him * * *'' and such "contributions shall take place between heirs and distributees on the same principles as between co-obligors."

Section 2080. Also to like effect, see Polley's Ex'rs v. Polley, 82 Ky. 64, so declaring the same rule for pro rata contribution, for payment of debt.

It being thus apparent and admitted that all the assets of the estate, exclusive of the property, real and personal, specifically devised to appellant Bill Young and testator's widow, Hattie Madison, are insufficient for payment of the testator's debts, funeral expenses, and costs of administration, we conclude it was therefore rightly held by the chancellor that the specifically devised property should be ratably charged, according to its value, with the payment of such remaining indebtedness independently of what might be declared by the testator was his wish or desire as to the specifically devised property as to its remaining intact and being left undisturbed in the hands of Bill Young, his nephew, and specific devisee of his "Dr. Keen farm."

It is next strenuously insisted by appellant that the chancellor further erred in adjudging to the appellant only a defeasible fee in the lands devised him (under clause 3 of his will), upon the condition or contingency that "should he die before arriving at the age of 21 years, or die without a child of his own," that said land should revert to testator's estate (as provided by clause 10 of the will); when it was, in such event, to be sold and the proceeds derived therefrom to go and be equally divided between his therein named nieces and nephews, since as to this land, so specifically devised with executory devise over upon either of said contingencies happening, the testator did further, by clause 11 of his will, declare it to be his "will and desire that the land willed to Bill Young, should not be conveyed or incumbered or mortgaged by him until he arrives at the age of 30 years." Appellant further contends that under and by

reason of the provision of these quoted clauses 3 and 10 of the will, reciting that should appellant "die before he becomes 21 years of age, without a child of his own," that upon the failure of either contingency his title would upon his living to be 21 or leaving child of his own should he sooner die, no longer be defeasible, but that he or his issue would upon the happening of either event then take a fee-simple title to the land. That such was the testator's intention was made manifest by his use of the additional phrase therein, "or without child of his own," thereby meaning that upon the happening of either contingency, he or his issue would take a fee-simple title therein when the conditional gift over of the land, by the executory devisee, would thereupon fail.

In the case of Lightfoot v. Beard, 230 Ky. 488, 20 S. W. (2d) 90, 96, this court in considering the effect of such testamentary language said:

"In the comparatively recent case of Atkinson v. Kern, 210 Ky. 824, 276 S. W. 977, we had before us the same question, and in that opinion we reviewed prior conflicting ones, and came to the conclusion * * * that the rule announced in the case of Harvey v. Bell, 118 Ky. 512, 81 S. W. 671, 26 Ky. Law Rep. 381, was the correct one, and which we held to be in accord with section 2344 of our present Statutes, prescribing that such contingent words shall be construed as 'a limitation to take effect when such person [the one to whom they are applied] shall die,' unless a different purpose be plainly expressed in the instrument."

And further stated the rule to be that:

"Where there is no intervening estate, and no other period to which the words 'dying without issue' can be reasonably said to have reference, they are held, in the absence of something in the will showing a contrary purpose, to create a defeasible fee [in the first taker], which may be defeated by the death of the devisee at any time without issue surviving him."

Also in Parepoint v. Parepoint's Adm'r, 228 Ky. 639, 15 S. W. (2d) 513, it was held that in such case the time of defeasance is the termination of the life estate, in absence of a provision in the will showing a contrary intention.

We are, however, of the opinion that under this rule, being also one of statutory construction, as declared by section 2344 of the Ky. Statutes, providing that, "unless a different purpose be plainly expressed in the instrument, every limitation in deed or will contingent upon a person dying 'without heirs,' or 'without children' or 'issue,' or other words of like import, shall be construed a limitation to take effect when such person shall die," that these clauses 3, 10, and 11 of the will, when considered together, do here show such contrary intention on the part of the testator not to give appellant a defeasible fee to be defeated by *death at any time without issue,* but despite testator's use of the words "dying without child of his own," in making the devise, we yet conclude that such interpretation of the clause is not to be adopted when this clause is construed with the language of clause 11 of the will, which declares that it was the will and desire of the testator that the land willed to appellant should not be conveyed or incumbered by him until he arrived at the age of 30, which we interpret as plainly expressing such different purpose on the part of the testator, and so clearly evidences his intention to vest appellee with fee-simple title in the land should he, the appellant, live so long as to either attain his majority, or then or before die leaving child of his own, as leads us to conclude that the named contingencies should be construed as a limitation upon devise over, taking effect at such time, rather than construing such contingent words, regardless of the evidence of a contrary intention, expressed in clause 11, as a limitation to take effect as a defeasance, whenever such person to whom it applied should die without issue, thus rendering his title, taken under the contingent devise a defeasible one, subject to be defeated upon the contingency of devisee's death at any time, without then leaving issue or child of his own. We are led to this conclusion by reason of the stated provisions of clause 11 subjecting the devise made appellant to the condition that he should not convey or incumber the devised land before arriving at the age of 30. Such restriction against a devisee's conveying or incumbering the land devised him would clearly be meaningless and futile were it the intention of the testator to devise appellant only a defeasible fee in the property or a title therein such as would be defeated by his death at any time without leaving child of his own. In such case he could not

convey or mortgage, with good title even upon the happening of the contingencies of his arriving at the age of 30. We therefore, in view of these considerations and for the reasons indicated, conclude that the testator intended under the language used by him in the clauses 3, 10, 11 of his will, considered together, in interpreting testator's intention in making devise of this farm to the appellant upon the contingencies and limitations therein, as in said clauses recited, thereby meant to give the appellant the land with defeasible fee, upon the limitations and subject to defeasance only *upon the contingencies* as above construed. Such we conclude was the intention of the testator, and it being thus ascertained, the devise over, came within the exception, provided in section 2344, which is here controlling.

It is the cardinal rule of testamentary construction to ascertain the intention of the testator and give it effect, and to this end all rules of construction and presumptions are made subordinate to the end of enforcing the testator's intention, which is to be gathered from his language, used in the will from its inception to its close. Ewering v. Ewering, 199 Ky. 450, 251 S. W. 645; Lightfoot v. Beard, 230 Ky. 488, 20 S. W. (2d) 90. We are therefore constrained to conclude for the reasons indicated that the learned chancellor erred in adjudging the appellant to take only a defeasible fee in the lands devised him, in that a defeasance, upon his death at any time without issue, we are of the opinion was counter to, rather than in accord with the testator's purpose and intention, as expressed in said clauses of his will, which must be given effect. However, the judgment of the chancellor, construing the will, being in accord with our views, save as we have hereinabove otherwise determined as to the construction of those certain parts thereof, above criticized and reversed, the judgment subject thereto, and so modified, should be and is affirmed.

Judgment affirmed.